# SUPREME COURT.

THEOPHILUS ANTHONY, the husband and executor of the last will and testament of SARAH WILHELMINA ANTHONY, deceased, appellant, agt. JACOB BROUWER, executor of and trustee under the last will and testament of JAMES GILL, deceased, THEOPHILUS A. GILL, JOHN R. GILL, ROBERT T. GILL, ANN GILL, ELIZABETH GILL and SARAH W. GILL, respondents. *(First appeal.)*

JOHN R. GILL, ROBERT T. GILL, ANN GILL, ELIZABETH GILL, and SARAH GILL, appellants, agt. JACOB BROUWER, executor, &c., of JAMES GILL, deceased, THEOPHILUS A. GILL, and THEOPHILUS ANTHONY, executor, &c., of SARAH W. ANTHONY, deceased, respondents. *(Cross appeal.)*

The testator gave to his executors two-thirds of his estate, real and personal, in trust, to pay the interest thereof to his sister, S. W. A., during her life, and upon her death the whole two-thirds to be paid to his brother, T. G., coupled with the following declaration :

"It being my intention by this my will, that, after the said annuities shall cease to become due and payable, that the said two-thirds or remainder of my estate shall go and belong to my said brother, T. G., to the exclusion of all my other brothers and relations :"

*Held*, that the brother, T. G., having died before the testator, the principal fund (two-thirds of the estate) *lapsed*, and became distributable among the testator's next of kin—under the statute of distributions, as in cases of intestacy as a vested estate. The payment thereof was, however, postponed until the death of the sister, S. W. A., who was to receive the income of the whole during her natural life. And S. W. A. became entitled absolutely to her equal proportion (one-third,) of the said principal fund as heir at law, which at her death passed under her will.

An *appeal* from a surrogate's decree of distribution must be taken in. *three months* therefrom, although it does not make a final distribution of the whole estate.

*Second District, Poughkeepsie General Term, May* 1866.
*Before* SCRUGHAM, LOTT, BARNARD *and* GILBERT, *Justices.*

JAMES GILL, of the town of Poughkeepsie, in Dutchess county, died in February, 1856. He executed his will in June, 1841. He had at that time two brothers, Theophilus

A. and Thomas, two sisters, Sarah W. Anthony and Ann Gill, living. His brother Theophilus A. Gill is not mentioned in the will.

In and by the will he gives and devises to his brother "Thomas Gill, his heirs and assigns," the one-third of his estate after payment of his debts.

The remaining two-thirds of his estate he gives to his executors in trust to pay the interest on one-third to his sister Sarah W. Anthony, during her life, and the interest on the remaining one-third to his sister Ann Gill during her life.

Upon the death of either of his said sisters, the executors were directed to pay one-half of the interest payable to her so dying, to the surviving sister during her natural life, and the other half to his brother Thomas Gill. And upon the death of the surviving sister, the whole two-thirds so held in trust were to be paid to his brother Thomas Gill. And the devise is coupled with the following declaration by the testator :

"It being my intention by this my will, that, after the said annuities shall cease to become due and payable, that the said two-thirds or remainder of my estate shall go and belong to my said brother Thomas Gill, to the exclusion of all my other brothers and relations."

Thomas Gill died before the testator, leaving John R. Gill, Robert T. Gill, Ann Gill, Elizabeth Gill and Sarah W. Gill, his children and heirs at law.

The sister Ann Gill also died before the testator, leaving no children.

On the first day of July, 1858, the executor had an accounting before the surrogate of Dutchess county, at which time a decree was made by the surrogate, directing the executor to distribute two-thirds of the amount in his hands, as follows : one equal third to Theophilus A. Gill, a brother ; one equal third to Sarah W. Anthony, a sister, and one-third to be divided, share and share alike, among the before-mentioned children of Thomas Gill.

The other one-third of said estate, amounting to $1,978.61,

the executor was directed to retain and invest, and to pay the interest to Sarah W. Anthony during her life, and at her death to be retained, subject to the order of the surrogate.

Sarah W. Anthony died in June, 1864, leaving a will, of which her husband, Theophilus Anthony is the executor.

On the 19th day of November, 1864, an accounting was had by Jacob Brouwer, executor, as to the fund set apart for Mrs. Sarah W. Anthony. A decree was then made, directing that the principal, less the expenses of accounting and commissions, be distributed by the executor as follows: one-half to Theophilus A. Gill, and the remaining one-half, share and share alike, among the before-mentioned children of Thomas Gill, deceased.

From this decree Theophilus Anthony, executor of and trustee under the will of Sarah W. Anthony, took an appeal, and the children of Thomas Gill took a cross appeal.

J. S. VAN CLEEF *and*
JOSEPH J. JACKSON, *counsel for appellant.*

I. By reason of the death of Thomas Gill and Ann Gill during the life of the testator, the entire estate lapsed, subject to the life estate in one-third thereof in favor of Mrs. Anthony, and became undisposed of by will. (*Williams on Executors*, 553, *and cases cited;* 17 *N. Y.* 561, 574-5; 1 *Jarman on Wills*, 310.)

II. The share directed to be invested for Mrs. Anthony, vested in the next of kin of the testator immediately upon his death, subject to the life estate in favor of Mrs. Anthony.

Where a legacy or bequest of personal property lapses, it immediately vests in the next of kin of the testator, subject to the execution of any trust capable of execution. (17 *N. Y.* 561, 574-5; 1 *Sand. Ch.* 119; 25 *Barb.* 134; 4 *Bradford*, 161; 1 *Paige*, 32; 1 *Jarman on Wills*, 641.)

When a future estate in remainder is in fee or absolute, it vests immediately on the death of the testator, the right of

possession only being suspended. (24 *N. Y.* 9; 25 *Wend.* 119; 1 *Redfield*, 469; 40 *Barb.* 286.)

III. The share set apart for Mrs. Anthony being undisposed of after the termination of her life estate, she became the absolute owner of one-third thereof immediately upon the testator's death, and could have compelled the payment of such one-third to her during life, and as her absolute property it passes to her husband and executor by her will. In *Hoes* agt. *Van Hoesen* (1 *Barb. Ch. R.* 379, 396-7), the chancellor decided that the administrators of the widow were entitled to one-third of the undisposed personalty left by her husband, although she had enjoyed a life estate in the whole of such personalty under the will. The chancellor holding that under the statute of distributions the widow was entitled to one-third of the personalty undisposed of absolutely, immediately upon her husband's death (1 *Barb. Ch.* 379, 396).

IV. The trust in regard to the final distribution of the estate having failed, the executor held the one-third for the benefit of Mrs. Anthony, as an executor merely. (24 *N. Y.* 9, 17 18; *Dayton on Surrogates*, 451.)

V. The distribution of July 9, 1858, was made on the theory that the entire estate had lapsed except the life estate in one-third, in favor of Mrs. Anthony.

All the next of kin consented or agreed to, and acquiesced in such distribution. By such mutual acquiescence Mrs. Anthony was deprived of one-half of the interest of Ann's share during life. The children of Thomas Gill are now concluded by their implied contract, even though they had misapprehended the law.

J. S. VAN CLEEF, *counsel for T. Anthony, respondent.*

I. The appeal from the decree of July 1st, 1858, cannot be entertained, and should be dismissed. It was not taken within three months (3 *R. S. 5th ed. p.* 906, § 25).

The decree by its terms is a *final decree*, and the parties to it having acknowledged it as such by their receipts

are bound by it as final in regard to the final distribution under it.

Mrs. Anthony lived more than seven years after the decree and distribution in 1858, and the decree cannot now be reviewed. (*Fols.* 54–75, 1 *Bradford* 1; 11 *Barb.* 554; 2 *Paige Ch.* 574.)

II. The surrogate had no authority to correct by the decree of 1864, any errors of the decree of 1858, if any such existed. The parties interested were all present in court in 1858. The decree as to the two-thirds then distributed, was final, and there is no pretence of fraud or mistake in regard to the facts.

"When all the parties interested are represented at the hearing, and the court has given its final sentence or decree, I know of no authority showing that these courts have ever exercised the general power of opening and reversing it again, upon the ground that they had erred as to the law, or had decided erroneously upon the facts." (*Opinion of Judge* DALY *in Brick's case* 15 *Abb. Pr. R.* 12, 36; *Dobke agt. McClaren,* 41 *Barb.* 491; *Sipperly agt. Baucus,* 24 *N. Y.* 46.)

III. The decree of 1858 was either a decree or not. If a decree, an appeal should have been taken within three months. If not a decree, then the parties interested in the estate must be regarded as having made a voluntary settlement, and they are bound by it. The right to have any error corrected was by action, which is now gone, seven years having elapsed before Mrs. Anthony's death.

It will hardly be contended that the surrogate in any, and especially a collateral proceeding before him, can revive a claim which is outlawed.

IV. There is no intention expressed or implied in the will that the fund in court shall go to the children of Thomas Gill, to the exclusion of the testator's brothers and sisters.

The testator first gave one-third of his estate to his brother Thomas, his heirs and assigns in contra-distinction to the qualified estates given to his sisters (*Fol.* 60). That one-third was distributed in 1858 (*Fol.* 72).

After the estates for life ceased, he directs the payment of the rest to Thomas Gill, simply further stating "it being ·my intention, that after the said annuities shall cease to become due and payable, the said two-thirds or remainder of my estate should go and belong to my brother, Thomas Gill, to the exclusion of all my other brothers and relations."

It will not be denied that the children of Thomas were included among the testator's "other relations," and the court will not decree payment to nephews and neices who are not named, in preference to a sister who is made one of the objects of the testator's bounty, unless the intention of the testator to that effect is clearly and unequivocally expressed in the will.

V. The appellants could have obtained any relief to which they are entitled, upon the appeal brought by this respondent (*Sup. Court Rules*, 44), and in any event they should be charged personally with the costs of this respondent, and the respondent, Jacob Brouwer, executor, &c.

A. ANTHONY *and* JAMES EMOTT,
*Counsel for R. T. and Sarah W. Gill.*

I. The decree of November 19th, 1864, was right as to Theophilus Anthony, executor, &c., and wrong as to the children of Thomas Gill, deceased.

Theophilus Anthony, executor, &c., founds his claim to one-third of this fund of $1,978.61 upon the assumption that the bequest to Thomas Gill *lapsed* by reason of his decease before the testator. This is not so, for two reasons.

1st. The will was of full force as to his testatrix, Sarah W. Anthony. She was given the interest of this fund for life, and the will excludes her from any other than the life estate in it. The will, by its terms, prevents the fee from vesting in her. She cannot be seized of a life estate in the whole, and at the same time of an absolute right to one-third of the principal.

2d. The· terms of the will indicate an intention by the

testator to give his whole estate to Thomas Gill, or, in case of his decease, to Thomas' heirs. This is clear, from the clauses already quoted from the will.

II. The heirs of Thomas Gill have taken their appeal to obtain the whole fund remaining in the hands of the executor, and insist that neither bequest in favor of their father lapsed by reason of his decease previous to the testator.

1. The rule formerly was strict that unless the legatee survive the testator, the legacy was extinguished. The Revised Statutes saved from its operation lineal desendants of the testator; and courts of equity, long before the statute, had controlled this rule by the manifest intention of the testator appearing upon the face of the will that the legacy should not lapse, and where the testator in the will has provided a substitute for the legatee dying in his life time. (*William's Ex'rs* 1039–40, *and cases cited; Id.* 1641–44, *and cases cited.*)

2. It is well established by the cases cited in the foregoing authority, that where there is a bequest to "A, *or his* personal representatives,"—to "A, or his heirs"—the word "or" implies a substitution, so as to prevent lapse.

The reading of this will is to "Thomas Gill, his heirs and assigns;" and this, taken with the last clause of the will, shows clearly the testator's intention to use the words "heirs and asssigns," as words of substitution (*Hawes* agt. *Banks,* 4 *Edw.* 664).

3. The intention of the testator that the legacy should not lapse, and his substitution of persons in place of the legatee dying in his lifetime, appearing on the face of the will, is all that is requisite to entitle Thomas Gill's children to the residue of this estate.

Is not the intention clear that Thomas or his children should take the whole estate ultimately? Testator excludes all his *other* brothers and relations.

It may be insisted that the exclusion of "relations" excludes the children of Thomas. The sentence, taken as

a whole, and in connection with the several clauses of the will, cannot bear that interpretation.

4. If the intention to prevent a lapse is apparent, in order to advance that apparent intention of the testator, "and" may be construed to be "or," and *vice versa.* This has been done in numberless cases. (*Maberey* agt. *Strode*, 3 *Vesey* 450; *Bell* agt. *Phyn*, 7 *Vesey*, 459; *Armstrong* agt. *Moran*, 1 *Bradf. Sur. R.* 314; *Van Vechten* agt. *Pearson*, 5 *Paige*, 512; *Chrystie* agt. *Phyfe*, 19 *N. Y. R.* 344.)

Here neither "*and*" nor "*or*" is inserted. Should not the court read it so as to carry out the apparent and evident intent?

5. The words "and to her heirs" have been held to intend a substitution (*Hawes* agt. *Banks*, 4 *Edw.* 664, *before cited*).

6. It may be claimed that the decree of the surrogate, in 1858, bars our claim now. We do not ask the court to compel the executor to pay over any moneys disposed of by that decree. We were bound by that decree only as to the moneys distributed under it, and the executor was directed to hold this fund of one-third of the estate, and retain it after Mrs. S. W. Anthony's decease, "subject to the order" of the surrogate. We now ask for that fund.

That accounting was not final, and bound none of the parties, save as to the funds disposed of by virtue of the order then made, in which order this present fund is directed to be held, subject to subsequent adjudication.

7. The children of Thomas Gill deceased, claim that an order should be made reversing the decree of the surrogate made November 19th, 1864, and directing the entry of a decree directing J. Brouwer, the executor, to pay the whole fund in his hand of principal, less the commission and costs and expenses of an accounting, to the heirs of Thomas Gill, deceased.

*By the court,* LOTT, J. The surrogate's decree of the 1st of July, 1858, makes an absolute disposition of all the estate of James Gill, deceased, except the principal of the fund

directed to be retained and invested by the executor for the benefit of Sarah Wilhelmina Anthony during her natural life. That fund was to abide the further order of the court, and was invested under the third provision of the will of said deceased, to produce the annuity given to Mrs. Anthony, and if Thomas Gill, the brother of the testator, had survived him he would have been entled to the whole of the principal, to the exclusion of all the other brothers and relations of the testator, but as he died before the testator and no other disposition was made thereof by the will, it lapsed and became distributable among the testator's next of kin, under the statute of distributions, as in cases of intestacy as a vested estate. The payment thereof was however postponed till the death of Mrs. Anthony, who, as before stated, was to receive the income of the whole during her natural life. She as one of the sisters of the testator was entitled to one third of the fund, and upon her death it passed under her will. The surrogate's further decree of 19th November, 1864, directing one half of the entire fund, after payment of certain expenses, to be paid to Theophilus Gill, and the other half to the children of Thomas Gill, was therefore erroneous.

There is, in our opinion, no ground for the claim of the children of Thomas Gill to the whole of that fund. The testator evidently made the bequest thereof under his will to his brother Thomas in the expectation that his brother would have survived him, and he made no provision for the event that has occurred. There is no reference in that bequest to the heirs or children of Thomas, nor is there any indication whatever that they should take what was intended for their father.

The provision for the exclusion of the other brothers and relations of the testator from participation in the fund was clearly based on the assumption that Thomas would have survived the testator, and taken it himself, and became inapplicable and inoperative when the intended dispostion of it failed.

These views lead us to the conclusion that the surrogate's

decree of November 19th, 1864, must be modified, so as to direct one-third of the fund in question to be paid to Theophilus Anthony, the executor of the will of Mrs. Anthony, one-third to Theophilus A. Gill, and the balance to the children of Thomas Gill in equal shares, after first paying thereout the costs of the said executor, and of Jacob Brouwer the executor, &c., of James Gill deceased.

The children of Thomas Gill have also appealed from the decree of 1st of July, 1858. It appears that on the 9th of the same month they received the distributive shares payable to them under it, and gave receipts in full therefor to the executor, they acquiesed in its provisions and did not appeal therefrom until the subsequent decree of 19th November, 1864, was made. This appeal was too late. It could not be taken after three months from its entry (*See* 2 *R. S. p.* 609, §§ 105–107).

That appeal must therefore be dismissed with costs.